**WO**

NOT FOR PUBLICATION

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

CESAR F. SILVAS,

        Plaintiff,

vs.

GMAC MORTGAGE, LLC.;
MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC.;
FIRST NATIONAL BANK OF
ARIZONA; RESIDENTIAL FUNDING
COMPANY, LLC; RESIDENTIAL
ACCREDIT LOANS, INC.; GMAC-RFC
SECURITIES; RALI SERIES 2007-QA3
TRUST; DEUTSCHE BANK TRUST
COMPANY AMERICAS; HSBC BANK
USA, N.A.; EXECUTIVE TRUSTEE
SERVICES, LLC; JOHN DOES AND
JANE DOES 1–1000; ABC
CORPORATIONS I–XX; AND XYZ
PARTNERSHIPS I–XX,

        Defendants.

No. CV-09-265-PHX-GMS

**ORDER**

Six motions are pending before the Court: (1) Plaintiff's Motion to Reconsider Set Aside Foreclosure Proceeding and Void any Granting and Conveyance of Plaintiff's Property (Dkt. # 62); (2) Defendants' Motion to Strike Plaintiff's "Response/Rebuttal to Defendants' Reply in Support of Motion to Dismiss the Second Amended Complaint With Prejudice" (Dkt. # 61); (3) Defendants' Motion to Dismiss the Second Amended Complaint With Prejudice (Dkt. # 45). (4) Plaintiff's Motion for Leave to Join Necessary and Indispensable

Third Parties (Dkt. # 54); (5) Plaintiff's First Motion for Leave to Amend Complaint (Dkt. # 57); (6) Defendants' Motion for Sanctions (Dkt. # 61).[1] For the following reasons, the Court denies Plaintiff's Motion to Reconsider, grants Defendants' Motion to Strike, grants-in-part and denies-in-part Defendants' Motion to Dismiss, denies Plaintiff's Motion for Leave to Join Third Parties, denies Plaintiff's Motion for Leave to Amend with permission to refile, and denies Defendants' Motion for Sanctions.[2]

## BACKGROUND

In January 2006, Plaintiff refinanced a home in Chandler, Arizona. He applied for a fixed rate loan and received a proposed mortgage payment of $972.22 per month. At closing, however, the mortgage included a variable rate feature, interest for only five years, monthly payments of $2,112.99 for initial 60-month interest only, monthly payments of $3,171.30 for the remaining 239 months of the loan term, and a Yield Spread Premium of $1,408.65.

Plaintiff then executed an Adjustable Rate Note (Dkt. # 45, Ex. A) and Deed of Trust (Dkt. # 39, Ex. 10). The Note listed First National Bank of Arizona ("First National") as the "Lender,"[3] and the Deed of Trust listed Mortgage Electronic Registration Systems, Inc.

---

[1] Eight Defendants have filed the applicable motions: GMAC Mortgage, LLC, Mortgage Electronic Registration Systems, Inc., Residential Funding Company, LLC, Residential Accredit Loans, Inc., GMAC-RFC Securities, RALI Series 2007-QA3 Trust, Deutsche Bank Trust Company Americas, and Executive Trustee Services, LLC. However, two Defendants have not joined in any motions: First National Bank of Arizona and HSBC Bank USA, N.A.

Without the Court's leave, Plaintiff listed Rex E. Carpenter and 402 NOW LLC in his motions' captions, but this Order addresses whether joinder of those parties is appropriate.

[2] The parties' request for oral argument is denied because the parties have had an adequate opportunity to discuss the law and evidence and oral argument will not aid the Court's decision. *See Lake at Las Vegas Investors Group, Inc. v. Pac. Malibu Dev.*, 933 F.2d 724, 729 (9th Cir. 1991).

[3] Plaintiff's Response to Defendants' Motion to Dismiss states the loan was issued to First National "c/o GMAC Mortgage Corporation" ("GMAC"), but the Second Amended Complaint ("Complaint") does not state as such. Plaintiff, however, does offer other documents stating the lender as "First National . . . c/o GMAC."

("MERS") as the "beneficiary of this Security Instrument (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS." (Dkt. # 45, Ex. A at 2; Dkt. # 39, Ex. 10 at 3.)

At some point, First National issued an Allonge to the Note for the subject loan in the amount of $375,641.00 to an unspecified entity.[4]  Defendants then placed Plaintiff's mortgage in a mortgage loan pool along with many other investors, and Defendants also created cross-collateralization agreements regarding Plaintiff's loan.

For purposes of context only, it appears from other pleadings before the Court that, in September 2008, MERS issued a Statement of Breach or Non-Performance and that Executive Trustee Services, LLC recorded a notice of trustee's sale.  Plaintiff filed suit in state court in January 2009, and the lawsuit was later removed to this Court.  During this lawsuit's pendency, the Chandler home was non-judicially foreclosed.

## DISCUSSION

## I.    Plaintiff's Motion to Reconsider

On August 21, 2009, the Court denied Plaintiff's Motion to Set Aside Foreclosure Proceedings and Vacate Forcible Detainer Judgment and Void Any Granting and Conveyance. (Dkt. # 58.)  On October 15, 2009, Plaintiff moved to reconsider that Order. (Dkt. # 61.)  The Court denies the Motion.

Local Rule of Civil Procedure 7.2(g)(2) provides,"Absent good cause shown, any motion for reconsideration shall be filed no later than ten (10) days after the date of the filing of the Order that is the subject of the motion."  Here, Plaintiff's Motion for Reconsideration is untimely because it was filed nearly two months after the Court issued its order.

Plaintiff also has not shown good cause for the delay.  "Good cause" primarily considers a party's diligence in filing the motion.  *See Johnson v. Mammoth Recreation, Inc.*,

---

[4] Plaintiff's Response to Defendants' Motion to Dismiss asserts that Residential Accredit Loans, Inc., through its affiliate, Residential Funding, purchased Plaintiff's loan. However, because this fact was not alleged in the Complaint or otherwise incorporated thereto, the Court does not consider this fact for purposes of the Motion to Dismiss.

975 F.2d 604, 609 (9th Cir. 1992) (analyzing good cause in the context of Federal Rule of Civil Procedure 16).  Plaintiff addresses neither the good cause standard nor his diligence in meeting the filing deadline set forth in Local Rule 7.2(g)(2).  The Court accordingly denies the Motion as untimely.  That Plaintiff is *pro se* does not, by itself, relieve Plaintiff from showing good cause where his motion is well over a month late. *See King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1986) ("Pro se litigants must follow the same rules of procedure that govern other litigants.").

Even if Plaintiff had shown good cause for the delay, reconsideration would still be inappropriate.  Local Rule 7.2(g)(1) states, "The Court will ordinarily deny a motion for reconsideration of an Order absent a showing of manifest error or a showing of new facts or legal authority that could not have been brought to its attention earlier with reasonable diligence."  In its original order, the Court found that Plaintiff improperly moved pursuant to Federal Rule of Civil Procedure 60(b), which allows a party to seek relief from a final judgment, *not* from a nonjudicial trustee's sale. (Dkt. # 58.)  Because the Court concluded Plaintiff's motion was procedurally unsound, the Court did not address Plaintiff's other arguments. (*Id.*)  Plaintiff's Motion to Reconsider does not cite any new law or facts, much less any new law or facts that could not have been cited earlier, that show why Federal Rule 60(b) would have permitted the Court to grant the relief sought (Dkt. # 61.)  Plaintiff instead recites many of the same legal arguments from his Complaint about transferring beneficial interests, enforcing promissory notes, cancellation of security interests, and default. (*Id.*)  To the extent any of these arguments have merit, the Court will address them when considering Defendants' Motion to Dismiss.  Accordingly, Plaintiff's Motion to Reconsider is denied.

/ / /

/ / /

/ / /

## II.     Defendants' Motion to Strike

Defendants have moved to strike Plaintiff's "Response/Rebuttal to Defendant's Reply in Support of Motion to Dismiss the Second Amended Complaint With Prejudice."  The Court grants the Motion.  After Defendants had filed their Motion to Dismiss (Dkt. # 45), Plaintiff filed a Response (Dkt. # 47), and Defendants filed a Reply (Dkt. # 48).  Without seeking the Court's leave, Plaintiff filed his "Response/Rebuttal," which the Court construes as a surreply (Dkt. # 61).

The Local Rules do not authorize filing a surreply. *See* L. R. Civ. P. 7.2 (providing for responsive and reply memoranda only); *Productive People, LLC v. Ives Design*, 2009 WL 1749751 (D. Ariz. June 18, 2009) at *3 n. 6 (granting motion to strike a surreply).  Moreover, nothing in the surreply could be construed as a motion for leave to file a surreply.  Because "[p]ro se litigants must follow the same rules of procedure that govern other litigants[,]" *King*, 814 F.2d at 567, the Court will not consider Plaintiff's surreply in deciding Defendants' Motion to Dismiss.

## III.    Defendants' Motion to Dismiss

### A.      Legal Standard for Motion to Dismiss

To survive a dismissal for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must contain more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action"; it must contain factual allegations sufficient to "raise the right of relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "The pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action."  *Id.*  While "a complaint need not contain detailed factual allegations . . . it must plead 'enough facts to state a claim to relief that is plausible on its face.'"  *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 555) (internal citations omitted).

When analyzing a complaint for failure to state a claim under Rule 12(b)(6), "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the non-moving party." *Smith v. Jackson*, 84 F.3d 1213, 1217 (9th Cir. 1996). In addition, the Court must assume that all general allegations "embrace whatever specific facts might be necessary to support them," *Peloza v. Capistrano Unified Sch. Dist.*, 37 F.3d 517, 521 (9th Cir. 1994), but the Court will not assume that the plaintiff can prove facts different from those alleged in the complaint, *see Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983); *Jack Russell Terrier Network of N. Cal. v. Am. Kennel Club, Inc.*, 407 F.3d 1027, 1035 (9th Cir. 2005). Similarly, legal conclusions couched as factual allegations are not given a presumption of truthfulness, and "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998). The Court considers only the "contents of the complaint" and "evidence on which the complaint 'necessarily relies'" if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the copy's authenticity. *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006); *see also Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds*, *Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002), ("[D]ocuments whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered . . . .").

1          **B.**      **Compliance With the Court's April 23, 2009 Order**

In April 2009, the Court granted Defendants' Motion for a More Definite Statement, ordering Plaintiff to follow certain procedures when filing a second amended complaint. (Dkt. # 28.)  The Order required Plaintiff do the following:

> (1) present all material allegations in short, plain statements with each claim for relief identified in separate numbered paragraphs and sections, each limited as far as practicable to a single set of circumstances;
> (2) specifically allege each legal right Plaintiff believes was violated, the specific defendant who violated the right, a sufficient factual context under *Twombly* to give the defendant notice of what conduct gives rise to the violation and how the defendant's conduct is connected to the violation of Plaintiff's rights, and the injuries Plaintiff suffered because of that defendant's conduct or omission;
> (3) pursuant to Federal Rule of Civil Procedure 9, plead all allegations of fraud with specificity including the time, place, and specific conduct of EACH defendant accused of fraud;
> (4) otherwise cure the deficiencies noted in this Order. (*Id.*)

The Order further explained that "allegations of legal rights arising under state or federal law also require Plaintiff to plead the specific sections and, if necessary, subsections of relevant statutes that grant such rights." (*Id.*)  Finally, the Order warned Plaintiff that the Court could dismiss Plaintiff's second amended Complaint under Federal Rule of Civil Procedure 41(b) if Plaintiff failed to comply with the Order. (*Id.*)

Defendants now assert Plaintiff's second amended Complaint failed to comply with this Order, but the Court will not grant Defendants' Motion to Dismiss *solely* on this ground. First, Defendants contend Plaintiff improperly alleges claims against "defendants" generally, as opposed to specifying which defendants undertook the particular conduct of which Plaintiff complains.  Plaintiff, however, specifies the applicable defendants in bold typeface beneath each claim for relief.  The term "defendants" can be read to include only those defendants applicable to each claim.  Second, Defendants assert Plaintiff did not specify enough facts or law, such as applicable sections and subsections of statutes, to state a claim for relief.  Similarly, Defendant argues Plaintiff's fraud-based claims fail to comply with Federal Rule of Civil Procedure 9(b).  To the extent Plaintiff has failed to comply with the Order by alleging insufficient facts or law, the Court will take this failure into account when considering whether Plaintiff has stated a claim upon which relief may be granted.  But the

Court will not terminate Plaintiff's entire case under Rule 41 solely because individual parts of his Complaint might not survive a motion to dismiss.

### C. Plaintiff's Specific Claims for Relief

### Claim I: Breach of Contract

Plaintiff alleges all Defendants breached the Note and Deed of Trust with Plaintiff. To state a breach of contract claim, "the complaint must allege an agreement, the right to seek relief, and breach by the defendant." *Commercial Cornice & Millwork, Inc. v. Camel Constr. Servs. Corp.*, 154 Ariz. 34, 38, 739 P.2d 1351, 1355 (Ct. App. 1987) (citing *City of Tucson v. Superior Ct.*, 116 Ariz. 322, 324, 569 P.2d 264, 266 (Ct. App. 1977)).

Plaintiff states two reasons for breach. First, Defendants placed Plaintiff's Note in a mortgage loan pool with many other investors, making it "impossible . . . to identify the 'note Holder[,]' the only person or entity entitled to enforce Plaintiff's obligation," which "inherently violates and breached Plaintiff's contractual rights under his Note obligation." (Dkt. # 39 at 5.) Second, "Defendants created cross-collateralization agreements, swapping agreements and over-collateralization of the pool assets, which applied Plaintiff's payments on his Note obligation to the obligation of others, in direct breach to the terms and conditions set forth in the Plaintiff's Deed of Trust and the Promissory Note." (*Id.* at 6.)

Defendants first state, "The breach of contract claim is based upon '[t]he Adjustable Rate Note and Deed of Trust' with 'First National Bank of Arizona.'" Although the Motion is slightly unclear, it appears Defendants argue that no contractual liability exists against them because First National (which did not join in this motion) and Plaintiff were the only original parties to the Note and Deed of Trust. Plaintiff does not respond to this argument, nor does Plaintiff comply with the April 23 Order because he fails to allege how each Defendant is liable on a contract that appears to be between Plaintiff and First National. Therefore, Plaintiff's breach of contract claim fails.

Even if all Defendants were parties to the contract, Plaintiff still has not stated a claim for relief. First, the Complaint does not highlight any clause in either the Note or the Deed

of Trust requiring Defendants to identify the "note holder." The Court finds nothing in either document, and Plaintiff's Response does not point to any contractual language, requiring this. Plaintiff's Response quotes a section of the Note, which states, "Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the 'Note Holder.'" This clause, which refers to a transfer of the note, does not require identifying the note-holder upon Plaintiff's request. Plaintiff makes no other legal argument, statutory or otherwise, explaining why failure to identify the note holder is a breach of contract. Especially in light of the Court's April 23 Order, more specificity is required to survive a motion to dismiss.

Second, the Complaint did not cite contract language prohibiting cross-collateralization agreements. The Complaint asserts, "Defendants created cross-collateralization agreements, swapping agreements and over-collateralization of the pool assets, which applied Plaintiff's payments on his Note obligation to the obligation of others, in direct breach to the terms and conditions set forth in the Plaintiff's Deed of Trust and the Promissory Note." Again, the April 23 Order requires more specificity. The Response cites the Deed of Trust, which states, "[A]ll payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) Principal due under the note; [etc.]." Plaintiff then for the first time cites Defendants' "Swapping Agreement," which states that "all or a disproportionately large percentage of principal payments on the mortgage loans will be allocated" to certain certificate holders. Even if the Court considered this evidence, which was referenced for the first time in Plaintiff's Response, the quoted language alone does not explain what actions actually occurred and how that breached any contract term. In fact, the quoted terms in the swapping agreement refer only to distribution of payments to *certificate-holders*, not affecting how payments are distributed on Plaintiff's *loan*. Accordingly, the Motion is granted on the breach of contract claim.

## Claims II, IV, and XIII: Injunctive Relief, Quiet Title, and Declaratory Relief

Plaintiff asserts a claim for "Injunctive Relief" against MERS, GMAC, and Executive Trust Services, LLC ("ETS"), and claims for "Declaratory Relief" and "Quiet Title"against all Defendants only to the extent Plaintiff asserts these as *independent* claims. Injunctions and declaratory judgments are remedies for underlying causes of action, but they are not separate causes of action as Plaintiff alleges. *See City of Tucson v. Clear Channel Outdoor, Inc.*, 218 Ariz. 172, 187, 181 P.3d 219, 234 (Ct. App. 2008) ("An injunction is an equitable remedy . . . .") (internal quotations omitted); *McMann v. City of Tucson*, 202 Ariz. 468, 473, 47 P.3d 672, 678 (Ct. App. 2002) (noting that a declaratory judgment "remedy" is available "'to declare the rights, status, and other legal relations'") (quoting Ariz. Rev. Stat. § 12-1831); *Land Dept. v. O'Toole*, 154 Ariz. 43, 47, 739 P.2d 1360, 1364 (Ct. App. 1987) ("The declaratory judgment procedure is not designed to furnish an additional remedy where an adequate one exists.").

Similarly, a quiet title action seeks the Court's equitable ruling that an individual is the rightful owner of real property. *See In re Roca*, 404 B.R. 531, 539 (Bankr. D. Ariz. 2009) ("Under Arizona law, a court may, in equity, quiet title in the individual that is the rightful legal and equitable owner of real property."); *Chantler v. Wood*, 6 Ariz. App. 134, 138, 430 P.2d 713, 717 (1967) (finding that a quiet title action "is one of equitable cognizance and that every interest in the title to real property, whether legal or equitable, may be determined in the action"). But Plaintiff must assert some legal or equitable theory for why he is the rightful owner, and thus his quiet title claim depends on his success on one of his other claims for relief. In the "Quiet Title" section of the Complaint, Plaintiff does not give any independent reasons for quieting title, but instead notes only that "Plaintiff has more than equitable interest in the property and [is], in fact, the owner of the property," that "Plaintiff will be successful on the merits," and that "Plaintiff is the only party that has been able to prove that he is the owner." (Dkt. # 39 at 12.)

Thus, if any of the above remedies are appropriate for any of Plaintiff's claims that survive the Motion to Dismiss, Plaintiff may seek them as remedies only, but not as separate claims for relief.[5]

### Claims III and IX: Conspiracy to Commit Fraud Using the MERS System; Unfair and Deceptive Acts and Practices, Arizona Consumer Fraud Act, "Fraud in the Factum," and "Fraud in the Inducement"

Plaintiff asserts several fraud-based claims against First National and GMAC. These include a statutory claim for violation of the Arizona Consumer Fraud Act and common law claims for "fraud in the factum" and "fraud in the inducement." Plaintiff also asserts conspiracy to commit fraud against all defendants, except Deutsche Bank and HSBC. These fraud-based claims fail, however, because Plaintiff has not alleged fraud with particularity.

The Consumer Fraud Act prohibits any "deception, deceptive act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely . . . in connection with the sale or advertisement of any merchandise whether or not any person has in fact been misled." Ariz. Rev. Stat. § 44-1522. Meanwhile, common law fraud requires showing:

> 1) a representation; 2) its falsity; 3) its materiality; 4) the speaker's knowledge of the representation's falsity or ignorance of its truth; 5) the speaker's intent that it be acted upon by the recipient in the manner reasonably contemplated; 6) the hearer's ignorance of its falsity; 7) the hearer's reliance on its truth; 8) the right to rely on it; and 9) his consequent and proximate injury.

*Echols v. Beauty Built Homes*, 647 P.2d 629, 631 (Ariz. 1982).

---

[5] Defendants assert Plaintiff lacks standing to assert these equitable remedies because Plaintiff has not offered to tender the full amount owing on the property. *See Abdallah v. United Savings Bank*, 43 Cal. App.4th 1101, 1109 (1996) (requiring a showing of tender of the amount to maintain a cause of action for irregularity in a sale procedure); *Farrell v. West*, 57 Ariz. 490, 491, 114 P.2d 910, 911 (1941) (finding courts should refuse to quiet title to property unless plaintiff does equity by tendering the amount owed). Although one factor is the fact that Plaintiff has not stated that he has offered to tender the amount owed, the Court must weigh all the equities to determine whether a particular equitable remedy is available. Because this may require evidence outside the pleadings, the Court may better analyze the issue on a motion for summary judgment.

Federal Rule Civil Procedure 9(b) requires a heightened pleading standard for fraud claims: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b); *see also Grismore v. Capital One F.S.B.*, 2007 WL 841513 at *6 (D. Ariz. Mar. 16, 2007) (applying Rule 9(b)'s particularity requirement to the Arizona Consumer Fraud Act). A plaintiff "must state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986); *see also Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) ("Averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged.") "[A] plaintiff must set forth *more* than the neutral facts necessary to identify the transaction. The plaintiff must set forth what is false or misleading about a statement, and why it is false." *Vess*, 317 F.3d at 1106 (internal quotations omitted).

Here, Plaintiff has not pled facts sufficient to maintain a fraud claim as required by Rule 9(b) and as instructed by the Court's April 23 Order. First, the Complaint does not set forth the content of the alleged misrepresentations or the reasons the alleged omissions are fraudulent. The Complaint asserts that Defendants' purported violations of various federal statutes are violations of the Federal Trade Commission Act, 15 U.S.C. § 45(a)(1), and are therefore, *per se* violations of ACFA. The Complaint, however, does not explain how any purported violations of those statutes are false statements or material omissions. Even so, as stated later in this Order, each of Plaintiff's claims based on federal statutes fails as a matter of law (except for the Fair Housing Act claim, which Plaintiff does not contend has any connection to ACFA liability). The Complaint also mentions a failure to "disclose [the] disadvantageous cost or nature of the loan," the "conceal[ment] [of] the identity of the true lender," "sham intermediary companies" and "kickbacks," knowledge that "Plaintiff had neither the income nor the assets to repay [the loan]," and "inflat[ion] of Plaintiff's property value by i) misrepresenting the condition of the property or ii) by comparing sales that are not comparable and/or iii) comparing to values of properties being 'flipped.'" These

allegations, however, are too broad to explain how Defendants' statements or omissions were false or inherently misleading. It is unclear why these actions necessarily inflated Plaintiff's property value (and if so, to what extent); it also is unclear how these allegations related to sham companies, kickbacks, or the entire alleged fraudulent scheme. The Complaint also does not allege other critical surrounding facts, such as when and how such statements were made, whether First National, GMAC, or another party made particular statements or omissions, or how each alleged misconduct harmed Plaintiff. For example, Plaintiff does not explain what the "disadvantageous" terms of the loan are, other than the fact that Plaintiff had to pay certain principal and interest payments, or how Defendants concealed any terms from Plaintiff. Similarly, while Plaintiff alleges Defendants concealed the lender's true identity, Plaintiff does not explain how this occurred other than to say (in another part of the Complaint) that Defendants transferred the mortgage into a large market. Likewise, Plaintiff alleges neither how Defendants created "sham intermediary companies" to receive kickbacks nor how that affected Plaintiff. Finally, although Plaintiff contends Defendants misrepresented the property's condition and improperly determined the property's value, the Complaint does not state how or when that occurred.

Regarding conspiracy to commit fraud using MERS, Plaintiff does not make any specific allegations regarding what MERS did that was fraudulent. Rather, the Complaint discusses whether MERS qualifies as a beneficiary to the Deed of Trust and Defendants' authority to foreclose without possessing the original promissory Note. These facts not only are insufficient to show a conspiracy to commit fraud under Rule 9(b), but also these allegations are incorrect.

Plaintiff agreed to empower MERS to foreclose because the Deed of Trust designates MERS as the beneficiary and authorizes MERS to take any action to enforce the loan, including the right to foreclose and sell the property. (Dkt. # 39, Ex. 10) Faced with a similar clause, *In re Roberts* held that "MERS was empowered to act on behalf of whoever was the equitable owner of the rights in the Deed of Trust" because "the Deed of Trust itself makes clear that MERS . . . may, if necessary, exercise all of the substantive rights of the . . . party

who holds the beneficial ownership of the Deed of Trust." 367 B.R. 677, 684 (Bankr. D. Colo. 2007). Furthermore, Arizona law does not require parties to produce an original note to perform non-judicial foreclosure. *Mansour v. Cal-Western Reconveyance Corp.*, 618 F. Supp.2d 1178, 1181 (D. Ariz. 2009).

## Claim X: Civil Conspiracy

Plaintiff asserts a claim for "civil conspiracy" against all defendants, except Executive Trustee Services. The Complaint alleges that Defendants agreed to engage in a Ponzi scheme involving unregulated securities, undisclosed insurance, and overcollateralization agreements to apply payments on the Plaintiff's obligation Note to the obligations of others.

In Arizona, there is no independent tort of conspiracy. *Hansen v. Stoll*, 130 Ariz. 454, 460, 636 P.2d 1236, 1242 (Ct. App. 1981). "A civil conspiracy requires an underlying tort which the alleged conspirators agreed to commit." *Baker ex rel. Hall Brake Supply, Inc. v. Stewart Title & Trust of Phoenix, Inc.*, 197 Ariz. 535, 545, 5 P.3d 249, 259 (Ct. App. 2000). Although the Complaint is unclear, it appears the underlying tort here is fraud. However, as stated above, Plaintiff has not properly alleged fraud in compliance with Federal Rule of Civil Procedure 9(b). Plaintiff's Response offers many explanations, but none are in the Complaint. For this reason, the claim for civil conspiracy (to commit fraud) fails.

## Claims V and VI: Truth in Lending Act ("TILA") and Home Ownership and Equity Protection Act ("HOEPA")

Plaintiff asserts claims against First National and GMAC for various nondisclosures in violation of TILA, 15 U.S.C. §§ 1635, 1638, and for extending a mortgage to a consumer unable to pay in violation of HOEPA, 15 U.S.C. §§ 1602(aa), 1639. Plaintiff has failed to state a claim under TILA or HOEPA.

Generally, only "creditors" are subject to TILA disclosure requirements. *See, e.g.*, 15 U.S.C. § 1635(a) ("The creditor shall clearly and conspicuously disclose . . . the rights of the obligor . . . . The creditor shall also provide . . . appropriate forms for the obligor to exercise his right to rescind . . . ."); § 1638(a) ("[T]he creditor shall disclose . . . [t]he 'finance charge'

. . . ."); 12 C.F.R. § 226.15 ("[A] creditor shall deliver two copies of the notice of the right

to rescind."). Similarly, HOEPA amended TILA, and is subject to the same requirement that

defendant be a "creditor." *See* 15 U.S.C. § 1639(h); *Cetto v. LaSalle Bank Nat'l Ass'n*, 518

F.3d 263, 271 (4th Cir. 2008) (noting that HOEPA amended TILA and affirming dismissal

because a mortgage broker was not a "creditor").

Section 1602(f) defines a "creditor" as:

> a person who both (1) regularly extends, whether in connection with loans,
> sales of property or services, or otherwise, consumer credit which is payable
> by agreement in more than four installments or for which the payment of a
> finance charge is or may be required, and (2) is the person to whom the debt
> arising from the consumer credit transaction is initially payable on the face of
> the evidence of indebtedness or, if there is no such evidence of indebtedness,
> by agreement." 15 U.S.C. § 1602(f).

This requires *both* that the defendant regularly extend consumer credit and be the person to

whom the debt is initially payable on the face of the evidence or by agreement. *Cetto*, 518

F.3d at 269 (4th Cir. 2008). The statutory scheme also demonstrates that servicers are treated

differently from creditors because separate sections address how a servicer may be liable as

an assignee. *See* 15 U.S.C. § 1641(e)–(f).

Multiple courts have dismissed cases against servicers because they were not

creditors. *See, e.g.*, *Harris v. Option One Mortgage Corp.*, — F.R.D. —, 2009 WL 2168882

at *5 (D.S.C. July 17, 2009) (dismissing claim against servicer because "[t]here [was] no

allegation that Plaintiffs' obligation under the loan was initially payable to [the servicer].");

*Mulato v. WMC Mortgage Corp.*, 2009 WL 3561536 (N.D. Cal. Oct. 27, 2009) (dismissing

claim against servicer because it was not a creditor and had never owned the loan); *Boles v.

Merscorp, Inc.*, 2009 WL 734133 at *3 (C.D. Cal. Mar. 18, 2009) (dismissing TILA claim

because the plaintiff alleged in its complaint that the defendant was a "servicer" and alleged

no independent facts to the contrary).

Plaintiff alleges in his Complaint that GMAC is a "servicer." In his TILA claim,

however, Plaintiff states a contradictory legal conclusion, "The transaction between Plaintiff

and Defendants was a 'credit sale' on which Defendants were 'creditor' and Plaintiff was

'consumer' as defined in 15 U.S.C. § 1602." (*Id.*) Similarly, in his HOEPA claim, the Complaint says only that "Defendants were 'creditor[s].'" (*Id.* at 14.) These references to "Defendants" fail to differentiate between First National and GMAC and to explain how GMAC specifically is a creditor, despite Plaintiff's more specific allegations to the contrary.

Plaintiff cites the HUD-1 and Settlement Instructions, which were attached as exhibits to his Response; these documents say the lender is "First National . . . c/o GMAC." These documents were not included with or explicitly referred to in the Complaint, however, and Plaintiff fails to explain why these documents should be incorporated into the Complaint. *See Marder*, 450 F.3d at 448 (explaining what the court may consider in a motion to dismiss); *Branch*, 14 F.3d at 454 (same). Even if the Court considered these documents, however, they do not establish that GMAC was a creditor under TILA and HOEPA. To the contrary, to say the lender is "First National . . . c/o GMAC" suggests First National is the lender and GMAC is the servicer "caring" for First National's loan.

Alternatively, Plaintiff's Response suggests, but does not specifically argue, that GMAC is liable as a creditor's assignee. This argument also fails. A servicer may be liable under TILA as an assignee if it is apparent on the face of the disclosure statement that the servicer once owned the obligation. *See* 15 U.S.C. § 1641(a) (stating that an assignee is liable "only if . . . the violation for which such action or proceeding is brought is apparent on the face of the disclosure statement provided in connection with such transaction . . . and . . . the assignment to the assignee was voluntary"); 15 U.S.C. § 1641(f) ("A servicer . . . shall not be treated as an assignee of such obligation" for purposes of assignee liability "unless the servicer is or was the owner of the obligation."). Plaintiff, however, does not assert facts showing assignee liability in the Complaint, or at least Plaintiff fails to highlight any relevant facts in his Response. Even if he had done so, Plaintiff offers nothing "on the face of the disclosure statement" to establish TILA liability. Nor does Plaintiff offer any specific facts about how GMAC owned the obligation.

## Claim VII: Fair Housing Act of 1968 ("FHA")

Plaintiff has properly stated a claim by asserting that First National and GMAC violated the FHA by intentionally targeting him for predatory loans based on his Latino heritage. The FHA prohibits "any person or other entity whose business includes engaging in residential real-estate related transactions to discriminate against any person . . . in the terms or conditions of such a transaction, because of race, color, religion, sex, handicap, familial status, or national origin." 42 U.S.C. § 3605(a). The Complaint cites "42 U.S.C. § 3601, *et seq.*" and alleges, among other things, that the "loan transaction subject to this action is a 'real estate related transaction'" and that "Defendants intentionally targeted Plaintiff based on Plaintiff['s] race and/or national origin . . . making Plaintiff susceptible to deceptive . . . lending practices, including, but not limited to violations alleged [elsewhere in the Complaint]." (Dkt. # 39 at 16.)

Defendants first move for dismissal because Plaintiff did not specify sufficient facts or law. The Court disagrees. Plaintiff's Complaint alleges that Defendants targeted Plaintiff because of his race in order to get him to agree to predatory lending terms. Whether Plaintiff can prove these allegations is an issue for summary judgment, not a motion to dismiss.[6]

Defendants also contend GMAC is not liable because it was not the originator on Plaintiff's loan. Defendants explain that because Plaintiff's FHA claim is based on *targeting* Plaintiff for discriminatory lending, and thus is based on events *prior to* execution of the Note and Deed of Trust, GMAC cannot be liable if it was not the originator. Defendants' factual assertion about its relative involvement at each stage is a factual determination for summary judgment, however, not for a motion to dismiss. The Complaint need assert only that GMAC engaged in residential real estate-related transactions and discriminated against

---

[6] Defendants correctly assert that Plaintiff does not cite specific FHA sections, which the April 23 Order required; however, the Complaint not only specifies the general sections for the FHA, but also it refers to discrimination in a "real estate related transaction," which has a clearly-labeled corresponding section in the FHA entitled "Discrimination in residential real estate-related transactions," 42 U.S.C. § 3605. These are sufficient legal and factual allegations to put Defendants on notice of the claim.

Plaintiff in making the transaction. Plaintiff did so, and it is plausible that GMAC in the loan at an early stage in some capacity.

### Claim VIII: Real Estate Settlement Procedures Act ("RESPA")

In Claim VIII, Plaintiff asserts a RESPA, 12 U.S.C. § 2601, *et seq.*, claim against First National and GMAC.[7] This includes a section 2604 claim for failure to give required disclosures, a Section 2605(e) claim for failure to respond to Plaintiff's qualified written request, and a Section 2607(a) claim for acceptance of kickbacks and referral fees. (Dkt. # 39 at 17–18.)

Plaintiff's Section 2604 claim fails because RESPA does not provide a private right of action for disclosure violations. RESPA does not explicitly authorize a section 2604 right of action. *See* 12 U.S.C. § 2614 (creating rights of action only for sections 2605, 2607, and 2608). Plaintiff also does not contend an implied right of action exists, and, even so, other courts have found no such right. *Collins v. FMHA-USDA*, 105 F.3d 1366, 1367–68 (11th Cir. 1997) (finding no implied right of action for section 2604); *Bloom v. Martin*, 865 F. Supp. 1377, 1385 (N.D. Cal. 1994) (same).

Plaintiff's Section 2607 claim also fails because Plaintiff has alleged no facts supporting such a claim. The Complaint states only that "RESPA and Reg. X prohibit kickbacks and referral fees under 12 U.S.C. § 2607 and 24 C.F.R. § 3500.14(b) respectively." (Dkt. # 39 at 18.) This statement is a legal conclusion; it does not specify who accepted kickbacks, what those kickbacks were, or the circumstances surrounding the transaction. Even after the Court's April 23 Order explained the importance of alleging specific facts, Plaintiff has failed to do so sufficiently to survive a motion to dismiss, and the Court need not address Defendants' other arguments regarding section 2607.

Plaintiff's Section 2605 claim, however, survives the motion to dismiss. Section 2605(e) requires, in pertinent part, that "[i]f any servicer of a federally related mortgage loan

---

[7] Claim XIII also lists TILA statutes and regulations, but those issues are addressed earlier in this Order.

receives a qualified written request from the borrower (or an agent of the borrower) for information relating to the servicing of such loan, the servicer shall provide a written response" and "provide the borrower with a written explanation or clarification that includes . . . information requested by the borrower . . . and . . . the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower." 12 U.S.C. § 2605(e).  The Complaint asserts (1) GMAC is a servicer subject to section 2605 requirements, (2) that Plaintiff sent a letter to GMAC on August 27, 2008, (3) that the letter was a "qualified written request" under RESPA, (4) that GMAC received the letter on September 2, 2008, (5) that Foreclosure Defense Group sent another qualified written request to GMAC on November 3, 2008, and 6) that GMAC failed to respond to these inquiries, including the "name [and] address of the owner of the obligation." (Dkt. # 39 at 19.)  This is sufficient factual support to put GMAC on notice of the claims against it.  Although the Complaint does not list the contents of the "qualified written requests" to demonstrate that the letters were actually qualified written requests, Plaintiff submitted a copy of the August 27 letter, which is labeled "qualified written request."[8] (Dkt. # 47, Ex. 10.)  Even absent that document, the Complaint identifies the letters' senders, recipients, and dates of dispatch sufficiently to raise a plausible claim for a section 2605 violation.

**Claim XI: Fair Debt Collection Practices Act ("FDCPA")**

Plaintiff asserts an FDCPA claim against GMAC, but the claim fails.[9]  The applicable sections of the FDCPA apply only to actions taken to collect a debt. *See e.g.*, 15 U.S.C. § 1692(d)–(g); *Mansour*, 618 F. Supp.2d at 1182.  Multiple courts in this Circuit have held that non-judicial foreclosure is not the collection of a "debt" under the FDCPA. *Mansour*, 618

---

[8] The Court considers this for the motion to dismiss because the Complaint refers to the document, the document is central to Plaintiff's RESPA claim, and neither party questions its authenticity. *See Marder*, 450 F.3d at 448; *Branch*, 14 F.3d at 454.

[9] Claim XI also lists claims that should have been listed under Plaintiff's claims for RESPA, and this Order addresses those arguments in the applicable section.

F. Supp.2d at 1182 ("[N]on-judicial foreclosure is not the collection of a 'debt' . . . ."); *Hulse v. Ocwen Fed. Bank*, 195 F. Supp.2d 1188, 1204 (D. Or. 2002) (distinguishing foreclosure of interest in property from efforts to collect funds from debtor). Here, Plaintiff does not assert any legal authority showing that the nonjudicial foreclosure of the Deed of Trust in this case is the collection of a debt. The Court thus grants the Motion on the FDCPA claim.

### Claim XII: Fair Credit Reporting Act ("FCRA")

Plaintiff has not asserted enough facts to properly allege that GMAC violated the FCRA.[10] The Complaint states that "Plaintiff disputed the completeness or accuracy of information furnished by Defendants to a consumer reporting agency" and that "Defendants have not reported the disputes to any or the entire consumer reporting agencies to which they furnish or have furnished the information." (Dkt. # 39 at 26.) The Complaint continues by contending that "Defendants['] illegal and negligent submittal of information to reporting agencies has slander[ed] Plaintiff's credit," and that "[t]he acts and practices described above constitute violations to 15 U.S.C. § 1681s-2(a)(3)."

Plaintiff has merely restated the elements of a Section 1681s-2(a)(3) claim. Plaintiff does not assert what information GMAC supplied that was incomplete or inaccurate, in what way Plaintiff disputed any information, who the consumer reporting agencies are, or any other surrounding facts. This is insufficient to put GMAC on notice of how it allegedly violated FCRA.

### D.    Dismissal Is With Prejudice

As discussed further in section V, *infra*, dismissal is with prejudice.

### IV.    Plaintiff's Motion for Leave to Join New Defendants and Motion for Leave to Amend

Plaintiff moves for leave to join two parties, Rex E. Carpenter ("Carpenter") and 402 NOW LLC ("402 Now"). Plaintiff alleges that, during this lawsuit's pendency, Carpenter

---

[10] Claim XII makes allegations relating to UDAP and the FTC; those arguments are addressed in the applicable sections.

obtained a forcible detainer judgment against Plaintiff and that 402 Now LLC received the property at the foreclosure sale. Because Plaintiff's Motion for Leave to Join is necessary linked to his Motion for Leave to Amend, the Court analyzes the Motions together.

Plaintiff's Motion to Amend, however, is procedurally deficient. Local Rule 15.1(a) provides that "[a] party who moves for leave to amend a pleading must attach a copy of the proposed amended pleading as an exhibit to the motion, which shall indicate in what respect it differs from the pleading which it amends, by bracketing or striking through the text to be deleted and underlining the text to be added." L. R. Civ. P. 15.1(a). Local Rule 15.1(b) also requires that a party seeking amendment "must lodge with the Clerk of Court an original of the proposed amended pleading."*Id.* at R. 15.1(b). Here, Plaintiff failed to do both, and the Court requires this *pro se* litigant to "follow the same rules of procedure that govern other litigants." *See King*, 814 F.2d at 567. Plaintiff must provide a text of the proposed amendment so that the Court may evaluate whether the proposed amendment is proper.

In filing its Motion to Amend, however, Plaintiff also seeks leave to amend, yet again, his existing claims. The Court will *not* allow amendment for any existing claims against existing parties. All of the claims that the Court dismisses in this Order are dismissed with prejudice. Plaintiff has already amended his Complaint twice, once with the Court's direction. *See Allen v. City of Beverly Hills*, 911 F.2d 369, 373 (9th Cir. 1990) (denying leave to amend where plaintiff previously amended and amendment would be futile); *Ascon Properties, Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989) ("The district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint."). Allowing Plaintiff to do so again could also prove costly and prejudicial to all parties and to the Court, especially given the extent of the briefing that has already occurred.

**VI.    Defendants' Motion for Sanctions**

Based on Plaintiff's improperly-filed surreply, Defendants have moved for sanctions of reasonable attorneys' fees and costs incurred incident to asserting the Motion to Strike and the Motion for Sanctions. (Dkt. # 61.) Federal Rule of Civil Procedure 11(c) states that if a

Rule 11(b) violation has occurred, the Court "*may* impose an appropriate sanction on any . . . party that violated [Rule 11(b)]," and upon a motion for sanctions, the Court "*may* award . . . reasonable expenses, including attorney's fees, incurred for the motion" (emphasis added); *see also Hudson v. Moore Bus. Forms, Inc.*, 836 F.2d 1156, 1163 (9th Cir. 1987) ("The district court has wide discretion in determining the appropriate sanction for a Rule 11 violation.").

Defendants do not cite which subsection of Rule 11(b) Plaintiff supposedly violated, but Defendants do contend Plaintiff's actions have "needlessly driven up the costs of this litigation." (Dkt. # 61 at 3.) It is mere speculation, however, to say that this *pro se* Plaintiff filed the surreply "for any improper purpose, such as to harass, cause unnecessary delay, or needlessly to increase the cost of litigation" in violation of Rule 11(b). Fed. R. Civ. P. 11(b)(1). It is equally plausible that Plaintiff merely misunderstood the Local Rules.

More importantly, even if a Rule 11(b) violation occurred (which the Court need not decide), monetary sanctions would be inappropriate because "[a] sanction imposed . . . must be limited to what suffices to deter repetition of the conduct or comparable conduct by others." *Id.* at 11(c)(4). "[N]onmonetary directives," such as admonishment, may be appropriate alternatives to monetary sanctions because "the basic principle governing the choice of sanctions is that the least severe sanction adequate to serve the purpose should be imposed." *Thomas v. Capital Sec. Servs., Inc.*, 836 F.2d 866, 878 (5th Cir. 1988). Although *pro se* litigants must follow the same rules as attorneys do, the Court is especially reluctant to sanction *pro se* litigants if less drastic alternatives exist.

Thus, the Court instructs Plaintiff to familiarize himself with both the Federal *and* Local Rules of Civil Procedure. This includes, but is not limited to, understanding Local Rules 7.2(b)–(d), which do not authorize filing surreplies, and following Local Rule 7.2(e), which limits motions and responses to seventeen pages and limits reply briefs to eleven pages. The Court will not hesitate to strike future filings that fail to comply with these rules, nor will it hesitate to impose monetary sanctions in the future.

The Court, however, finds no reason why monetary sanctions are required against a *pro se* plaintiff at this stage. Accordingly, to the extent Defendants have moved for monetary sanctions, the Court denies Defendants' Motion for Sanctions.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Reconsider Set Aside Foreclosure Proceeding and Void any Granting and Conveyance of Plaintiff's Property (Dkt. # 62) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' Motion to Strike Plaintiff's "Response/Rebuttal to Defendants' Reply in Support of Motion to Dismiss the Second Amended Complaint With Prejudice" (Dkt. # 61) is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants' Motion to Dismiss the Second Amended Complaint With Prejudice (Dkt. # 45) is **GRANTED IN PART** and **DENIED IN PART**.

1. Regarding Claim I (Breach of Contract), the Motion is granted.

2. Regarding Claims II (Injunctive Relief), the Motion is granted to the extent Plaintiff alleges this as a separate cause of action. This remedy may be available for other underlying legal theories, however.

3. Regarding Claim III (Conspiracy to Commit Fraud Using the MERS System), the Motion is granted.

4. Regarding Claim IV (Quiet Title), the Motion is granted to the extent Plaintiff alleges this as a separate cause of action. This remedy may be available for other underlying legal theories, however.

5. Regarding Claim V (TILA), the Motion is granted.

6. Regarding Claim VI (HOEPA), the Motion is granted.

7. Regarding Claim VII (FHA), the Motion is denied.

8. Regarding Claim VIII (RESPA), the Motion is granted.

9. Regarding Claim IX (UDAP, ACFA, Fraud in the Factum and Fraud in the Inducement), the Motion is granted.

10. Regarding Claim X (Civil Conspiracy), the Motion is granted.

11. Regarding Claim XI (FDCPA), the Motion is granted.

12. Regarding Claim XII (FCRA), the Motion is granted.

13. Regarding Claim XIII (Declaratory Relief), the Motion is granted to the extent Plaintiff alleges this as a separate cause of action. This remedy may be available for other underlying legal theories, however.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Leave to Join Necessary and Indispensable Third Parties (Dkt. # 54) is **DENIED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that Plaintiff's First Motion for Leave to Amend Complaint (Dkt. # 57) is **DENIED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that Defendants' Motion for Sanctions (Dkt. # 61) is **DENIED**.

DATED this 30th day of November, 2009.

_____
G. Murray Snow
United States District Judge